JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Steve and Gina Cady, Scott Reinhart, John Riello | Rust-Oleum Corporation |

| (b) County of Residence of First Listed Plaintiff   Berks | County of Residence of First Listed Defendant   Lake |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Daniel C. Levin, Esquire, Levin, Fishbein, Sedran & Berman; 510 Walnut Street, Ste. 500, Philadelphia, PA 19106; 215-592-1500 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☒ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1332(d)(2)

Brief description of cause:
Plaintiff is bringing a products liability action for property damages.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   SEE ATTACHED LIST

DOCKET NUMBER   SEE ATTACHED LIST

DATE   10/28/14

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Related cases:

*McCain, et al. v. Rust-Oleum Corporation*, 1:14-cv-04852 (Northern District of Illinois, Eastern Division) - Filed June 26, 2014

*Webber, et al. v. Rust-Oleum Corporation*, 1:14-cv-02248-GLR (District of Maryland, Northern Division) - Filed July 15, 2014

*Shogren, et al. v. Rust-Oleum Corporation*, 1:14-cv-08058 (Northern District of Illinois, Eastern Division) - Filed October 15, 2014

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Steve and Gina Cady, et al | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Rust-Oleum Corporation | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)　　　　　　( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　　　　( )

| | | |
|---|---|---|
| _10/28/14_ | _(signature)_ | **Plaintiffs** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-592-1500 | 215-592-4663 | Dlevin@lfsblaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Reading, Pennsylvania_

Address of Defendant: _Vernon Hills, Illinois_

Place of Accident, Incident or Transaction: _Reading, Pennsylvania_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　　　Yes□　No**X**

Does this case involve multidistrict litigation possibilities?　　　　Yes**X**　No□

*RELATED CASE, IF ANY:*

Case Number: _____SEE ATTACHED LIST_____　　Judge _____　Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?　　　　Yes□　No**X**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?　　　　Yes□　No**X**

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?　　　　Yes□　No**X**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?　　　　Yes□　No**X**

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. □ Civil Rights
8. □ Habeas Corpus
9. □ Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. □ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. X Products Liability
8. □ Products Liability — Asbestos
9. □ All other Diversity Cases

(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,___Daniel C. Levin_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _10/28/14_____     _____     _80613_____
                           Attorney-at-Law                Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court
except as noted above.

DATE: _10/28/14_____     _____     _80013_____
                           Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff:  Reading, Pennsylvania

Address of Defendant:  Vernon Hills, Illinois

Place of Accident, Incident or Transaction:  Reading, Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐   No**X**

Does this case involve multidistrict litigation possibilities?          Yes**X**   No☐

*RELATED CASE, IF ANY:*

Case Number:  SEE ATTACHED LIST          Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?          Yes☐   No**X**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
   action in this court?          Yes☐   No**X**

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
   terminated action in this court?          Yes☐   No**X**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?          Yes☐   No**X**

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
      (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. X Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases

(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I,    Daniel C. Levin    , counsel of record do hereby certify:

  ☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

    ☐ Relief other than monetary damages is sought.

DATE: _10/28/14_          _____          _80013_
                              Attorney-at-Law                       Attorney I.D.#

    **NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court
except as noted above.

DATE: _10/28/14_          _____          _80013_
                              Attorney-at-Law                       Attorney I.D.#

CIV. 609 (5/2012)

Related cases:

*McCain, et al. v. Rust-Oleum Corporation*, 1:14-cv-04852 (Northern District of Illinois, Eastern Division) - Filed June 26, 2014

*Webber, et al. v. Rust-Oleum Corporation*, 1:14-cv-02248-GLR (District of Maryland, Northern Division) - Filed July 15, 2014

*Shogren, et al. v. Rust-Oleum Corporation*, 1:14-cv-08058 (Northern District of Illinois, Eastern Division) - Filed October 15, 2014

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**STEVE and GINA CADY, SCOTT REINHART, JOHN RIELLO,** on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**RUST-OLEUM CORPORATION,**

Defendant.

CASE NO. _____

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

1.    Plaintiffs Steve and Gina Cady,  Scott Reinhart, and John Riello, ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this class action complaint against Defendant Rust-Oleum Corporation ("Rust-Oleum" or "Defendant"), and allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by their attorneys.

2.    Plaintiffs bring this consumer class action individually and on behalf of the Classes defined below against the Defendant to obtain relief, including, among other things, damages and declaratory and injunctive relief. This lawsuit arises out of violations of law in connection with Defendant's design, manufacture, marketing, advertising, selling and warranting of their Rust-Oleum Restore paint products ("Restore" or "Restore paint") used as resurfacing finish on outdoor decks and related structures. Defendant's Restore product contain serious design and manufacturing defects, making them susceptible to separating, cracking, bubbling, flaking, chipping and general degradation after application.

1

3.      Defendant warrants that its Restore paint is designed to resiliently protect a consumer's existing decking and related structures with minimal maintenance. Defendant's website, www.rustoleum.com, describes Restore paints as "liquid-armor resurfacers" which "offer a high-performance, low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting." Defendant represents that their paint is ten (10) times thicker than ordinary paint, giving it superior coverage qualities with the ability to mask imperfections such as cracks on decks and patios.

4.      Unfortunately, the common failures with Restore paint require replacement far sooner than consumers reasonably expect. Accordingly, Plaintiffs assert claims for violation of the Magnuson-Moss Act, breach of implied warranties, breach of express warranty, violations of consumer protection laws and deceptive trade practice acts, unjust enrichment, negligent misrepresentation, negligence, and declaratory and injunctive relief.

5.      Defendant designed, manufactured, marketed, advertised, warranted and sold Restore paint to Plaintiffs and the Class as well as the general public. Defendant advertised that the product was fit for the ordinary purpose for which such goods were used and was free from defects in materials and workmanship.

6.      Defendant however knew, prior to the time of sale that their Restore paint was defective, and in fact separated, cracked, bubbled, flaked, chipped, peeled and generally deteriorated shortly after application.

7.      Plaintiffs and members of the Class relied on Defendant's representations, and as a result of Defendant's failure to properly develop, test, and ensure that its Restore paint was properly designed, Plaintiffs and the Class have suffered damages.

2

8.     Consequently, Defendant is responsible and liable for, among other things, the costs of removing and replacing the Restore paint installed in the homes, offices, buildings and other structures of Plaintiffs and members of the proposed Class, as well as other related consequential damages resulting from Defendant's defective Restore paint that has failed prematurely.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiffs and Defendant are of diverse citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.000) exclusive of interest and costs. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the property that is the subject of this action is situated in this District, substantial events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

10.     Defendant contemplated the sale, distribution, and use of Restore paint products in this District.

11.     As a result of the Defendant's design, manufacture, marketing, advertising, selling and warranting of Restore paint products to purchasers throughout Pennsylvania, the Defendant obtained the benefits of the laws of Pennsylvania commerce.

12.     Defendant conducted systematic and continuous business activities in and throughout the Commonwealth of Pennsylvania through the promotion of marketing of its business.

## PARTIES

**Plaintiffs**

13.     Plaintiffs Steve and Gina Cady, ("Cady Plaintiffs" or together with Kathleen Seitz, the "Pennsylvania Plaintiffs") husband and wife are citizens and residents Pennsylvania. They co-own a home in Reading, Berks County, Pennsylvania. Plaintiffs purchased and applied Restore paint to their wood deck at their home in or around July 2013. The Restore paint applied to their deck has failed and the Cady Plaintiffs have suffered damages as a result of the product failure.

14.     Plaintiff Scott Reinhart, ("Reinhart" or together with Steve and Gina Cady the "Pennsylvania Plaintiffs") is a citizen and resident of Pennsylvania. He owns a home in Summit Hill, Carbon County, Pennsylvania. Plaintiff Reinhart purchased and applied Restore paint to his wood deck at his home in or around August, 2013. The Restore paint applied to his deck has failed and Plaintiff Reinhart has suffered damage as a result of the product failure.

15.     Plaintiff John Riello (the "New Jersey Plaintiff") is a citizen and resident of New Jersey. He owns a home in River Vale, Bergen County, New Jersey. Plaintiff Riello purchased and applied Restore paint to his composite wood deck at his home in or around July 2013. The Restore paint applied to his deck has failed and Plaintiff Riello has suffered damages as a result of the product failure.

**Defendant**

16.     Defendant Rust-Oleum Corporation is a subsidiary of RPM International, Inc. Rust-Oleum Corporation makes protective paints and coatings for home and businesses. Its corporate headquarter is located in Vernon Hills, Illinois.

4

## COMMON FACTUAL ALLEGATIONS

17.     Defendant holds itself out to the public as a manufacturer of durable and long lasting paint products. Defendant designed, developed, manufactured, tested, marketed, warranted and sold Restore paint products directly and indirectly, through distributors, to Plaintiffs, subcontractors, and/or agents.

18.     Defendant represents to consumers that Restore paint is designed to refresh decks and patios by forming a "tough [sic] resilient coating over existing deck" which "last for years with less maintenance than deck paints or stains! Satisfaction guaranteed."

19.     Among other claims, Defendant made express warranties about the quality and fitness of Restore pain. On Defendant's website, and on Defendant's YouTube page (created by Rust-Oleum Corporation to market Restore paint. For example, Defendant stated, inter alia, that:

> Restore is a durable coating product formulated to resurface most wooden and composite decks while providing lasting protection against moisture and the damaging effects of the sun. Designed for a variety of applications, it is the most cost effective and environmentally conscious way to revitalize wood surfaces. Deck & Concrete Restore can be applied with a roller and dries to form a tough, resilient surface that will look beautiful and last for years with little maintenance.
>
> 10x thicker than ordinary deck coating
>
> Fills cracks, locks down splinters
>
> Water based, safe easy clean up
>
> Easy to apply with Restore Roller
>
> Hide Imperfections, slip resistant[1]
>
> It lasts 10 to 12 years and in fact it comes with a life time warrantee.[2]

---

1 See: http://web.archive.org/web/20130409043501/http:/rustoleumrestore.com/dcr/

[2] *See*: https://www.youtube.com/watch?v=-IcXA8966b4

It's a thick viscous product that fills cracks up to a quarter inch and encapsulates splinters and extends the life of your deck.[3]

20.     Defendant provided the following lifetime warranty on all of the Rust-Oleum Restore paint products: Defendant warrants "complete satisfaction with the performance of this product for as long as you own or reside in your home when the product has been applied according to the directions provided."

21.     Despite Defendant's express and implied warranties and claims that the products are fit for ordinary purposes, Restore paint fails to deliver as promised and expected. Furthermore, Defendant have failed to fully honor existing warranties and failed to compensate Plaintiffs and members of the class under their warranties and applicable law. Moreover, because Defendant had been aware of the defective nature of their Restore paint, any limitations on Defendant's warranties are unconscionable and/or fail their essential purpose because Restore paint was defective at the time Plaintiffs and members of the class acquired Restore paint.

22.     Plaintiffs and members of the Class did not have notice of the defect and had no way of learning about the defect other than from Defendants.

23.     The bargaining power between Plaintiffs and members of the class on one hand and Defendant on the other hand was grossly unequal and therefore any limitations on the warranty are substantially one-sided, making those limitations unconscionable.

24.     Defendant Rust-Oleum Corporation limits its offer of warranty payment to its estimate of the purchase price of Restore paint—just a fraction of the actual replacement cost.

25.     Despite Defendant's representations to consumers as alleged herein, Restore paint is plagued with design and manufacturing flaws that cause the paint, among other things, to separate, crack, bubble, flake, chip and generally degrade shortly after installation.

---

[3]*See*: https://www.youtube.com/watch?v=e156aQVTr9Y (last accessed July 11, 10:35 am).

26.     Restore paint is a water-based acrylic paint with a blend of inorganic and organic pigments. Restore paint additionally contains crystalline silica, which according to Defendant's website requires additional precautions when removing through sanding or abrading due to dangerous nature of the compound in particulate form.[4] Consequently, removal and replacement of the defective Restore paint requires a labor-intensive, expensive process that runs the risk of damaging or deteriorating the underlying substrate and carries with is substantial costs and significant health risks to Plaintiffs and members of the Class.

27.     Defendant and its authorized agents and distributors made the above representations with the intent and purpose of inducing suppliers, builders, and consumers to purchase and apply Restore paint on their decks, patios and other structures in residential and commercial structures in the Commonwealth of Pennsylvania and elsewhere.

28.     Upon information and belief, Defendant also made numerous material omissions in its advertising and promotional literature and uniformly withheld important information relating to the design, reliability, and performance of Restore paint.

29.     Defendant continue to make false representation about the quality and fitness of the Restore paint including, those references in paragraphs 3 and 19 *supra*.

30.     Had Defendant not withheld and omitted important information about the design, reliability, and performance of Restore paint, Plaintiffs and members of the Class would not have purchased the products or used them on their properties.

31.     Defendant knew or should have known that the foregoing defects made Restore paint susceptible to premature failure through various processes.

---

[4] See: https://www.rustoleum.com/pages/homeowner/tips-and-techniques/restore-10x-tips-and-techniques/restore-wood-tips/

32.    Defendant's design and materials choices have created a product that begins to fail on its first day of use, even if perfectly used in its intended environment.

33.    Because of the defective design and manufacture, Restore paint failed in its intended purpose, is inherently defective and is substantially certain to fail before the expiration of the express warranty provided by Defendant or before the useful life of the decking.

34.    Upon information and belief, Defendant did not test Restore paint in its anticipated environments before selling the product to the public, failed to test for things that they knew or should have known would lead to premature failure and failed to investigate or test whether well-known and expected conditions would lead to premature failure of Restore paint.

35.    Defendant knew or reasonably should have known that Restore paint products were defective prior to the time of sale, and intentionally concealed that material information (and the truth concerning their product) from Plaintiffs and member of the Class, while continually marketing Restore paint as a dependable and reliable product. Defendant's acts of negligent misrepresentation include failing to disclose that its Restore paint was defectively manufactured or designed and would deteriorate in less than the expected lifetime, leading to damage to the very structures they were purchased to protect.

36.    The defects in Restore paint are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Restore paint was defective and unreliable until after applying the Restore to their entire decks and related structures, despite their exercise of due diligence.

37.    Defendant had a duty to disclose that their Restore paint was defective, unreliable, and inherently flawed in its design and manufacture.

8

**Facts Specific to Plaintiffs**

38.     Plaintiffs Steve and Gina Cady purchased Restore paint from Home Depot in or around July 2013 for use on their home deck. The total cost of the Restore paint was approximately $230.00.

39.     Prior to purchasing the Restore paint Plaintiffs Steve and Gina Cady spoke with a Rust-Oleum representative at Home Depot who touted the Restore product as being "tested for a number of years," and "a wonderful product, with wonderful reviews." Plaintiffs Steve and Gina Cady also viewed Defendant's in-store video advertisements suggesting the same. When purchasing Rust-Oleum Restore, Plaintiffs Steve and Gina Cady relied on Defendant's reputation, and the representations of Defendant's representative and its advertisements as being true.

40.     Plaintiffs Steve and Gina Cady applied Restore paint to their deck and followed Defendant's instructions for preparation and installation.

41.     In June 2014, Plaintiffs Steve and Gina Cady contacted Rust-Oleum to notify Defendant of the chipping, cracking and deterioration their deck was experiencing and to ask what could be done to remedy, prevent or restore the damage and deterioration they were experiencing. In response to this inquiry, Plaintiffs Steve and Gina Cady were asked by Rust-Oleum to fill out and submit a warranty claim form to Defendant. Pursuant to Defendant's request, Plaintiffs filled out this warranty claim form and submitted it to Defendant.

42.     In response to the claim form Plaintiffs Steve and Gina Cady submitted, they received a check for approximately $230.00, even though their decking had chipped cracked and deteriorated.

43.     Plaintiff Scott Reinhart purchased approximately six (6) gallons of Restore paint in or around August 2013 from a Lowe's hardware store. Prior to purchasing Restore paint, Plaintiff Reinhart reviewed Defendant's website where Plaintiff Reinhart viewed promotional videos and online marketing. In addition, Plaintiff Reinhart reviewed Defendant's marketing materials at the retail outlet where Restore paint was sold.

44.     In purchasing Restore paint, Plaintiff Reinhart relied on Defendant's reputation, as well as Defendant's advertisements, including but not limited to print and internet advertising and marketing materials. Additionally, Plaintiff Reinhart reviewed Restore's lifetime warranty and consequently relied on that warranty when purchasing and applying Rust-Oleum Restore to his deck.

45.     Plaintiff Reinhart applied Rust-Oleum Restore to her deck and followed Defendant's instructions for preparation and application.

46.     Within six (6) months of applying the Restore paint, the paint began to crack, chip and peel off of Plaintiffs Reinhart's deck. Shortly thereafter Plaintiff Reinhart contacted Rust-Oleum to notify them of the damage and to ask what could be done to remedy, prevent or restore the damage and deterioration he was experiencing. In response to this inquiry Plaintiff Reinhart was asked to submit a warranty claim from to Defendant. Pursuant to Defendant's request Plaintiff Reinhart filled out and submitted this warranty claim form for reimbursement.

47.     In response to the warranty claim form that he submitted Plaintiff Reinhart received a refund of the purchase price of the Restore paint.

48.     The damage caused to Plaintiff Reinhart's deck has necessitated repair, removal and replacement of the Restore paint. Plaintiff Reinhart has incurred money damages for the cost of repair, removal and replacement of the Restore paint from his deck.

49.     In the Summer of 2013, Plaintiff John Riello purchased Restore paint to cover two decks at his home. Prior to purchasing Restore paint, Plaintiff Riello viewed Defendant's advertisement and marketing materials. Plaintiff Riello viewed promotional videos and online marketing presented by Defendant on their website as well as at retail outlets.

50.     Plaintiff Riello hired a contractor to prepare his deck for installation and to install the Rust-Oleum Restore.

51.     Less than a year after applying Restore paint to his deck, the underlying boards have swelled, and the Restore paint had begun to crack, chip, peel, flake and generally deteriorate. The problems have only worsened with the passage of time and will continue to do so until it they will necessitate removal and replacement.

**Consumer Complaints**

52.     The problems with Restore paint experienced by Plaintiffs and members of the Class are not unique. In fact, the product page for Restore paint on Amazon.com is replete with consumer complaints that mirror the difficulties and problems alleged in this complaint.[5] In addition, Defendant's own Facebook page has been inundated with customer complaints, and tribulations regarding the Restore paint. [6]

## CLASS ACTION ALLEGATIONS

53.     This action is brought and may be maintained as a nationwide class action for declaratory and injunctive relief pursuant to Rule 3 of the Federal Rules of Civil Procedure and on behalf of Plaintiffs and all others similarly situated. The proposed declaratory and injunctive relief class is defined as follows:

---

[5] See http://www.amazon.com/Rust-Oleum-49504-Deck-Concrete-4-Gallon/product-reviews/B005LDBGAO/ref=cm_cr_pr_btm_link_next_3?ie=UTF8&pageNumber=3&showViewpoints=0&sortBy=byRankDescending

[6] See www.facebook.com/Rust-Oleum

All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in the United States, in which Restore paint products is or has been applied. Excluded from the Class are Defendant, any entity in which Defendant have a controlling interest or which have a controlling interest of Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

Additionally or alternatively, Plaintiffs seek to represent the following subclasses, defined as follows:

Pennsylvania Class:

All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in Pennsylvania, in which Restore paint products is or has been applied.

New Jersey Class:

All individuals and entities that have owned, own, or acquired homes, residences, buildings or other structures physically located in New Jersey, in which Restore paint products is or has been applied.

54.     The following persons should be excluded from all Classes: (1) Defendant, and any entity in which Defendant has a controlling interest or which have a controlling interest of Defendant; (2) Defendant's legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

55.     Plaintiffs reserve the right to redefine the Class(es) prior to class certification.

56.     The members of the proposed Class are so numerous that joinder of all members is impracticable.

57.     The exact number of Class members is unknown as such information is in the exclusive control of Defendant. However, due to the nature of the trade and commerce involved, Plaintiffs believe the Class consists of thousands of consumers.

58.     Common questions of law and fact affect the right of each Class member and a common relief by way of damages is sought for Plaintiffs and Class members.

59.     The harm that Defendant caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

a.      Whether Restore paint is defective in that it fails prematurely and is not suitable for use as an exterior decking product for the length of time advertised, marketed, and warranted;

b.      Whether Restore paint is defectively designed or manufactured;

c.      Whether Defendant sold and entered a defective product into the stream of commerce in Pennsylvania and other states;

d.      Whether Rust-Oleum failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.      Whether Defendant failed to prevent damages which occurred as a result of defective Restore paint they designed, manufactured and placed into the stream of commerce;

f.      Whether Defendant properly warned consumers about the reasonably foreseeable defective nature of Restore paint;

g.      Whether Defendant were unjustly enriched by the sale of defective Restore paint;

h.      Whether Defendant breached its warranties as represented and engaged in fraudulent, false, deceptive or misleading advertising and misconduct with respect to the handling of warranty claims;

i.      Whether Defendant omitted material information when they sold Restore paint;

j.      Whether members of the proposed Class have sustained damages and, if so, the proper measure of such damages; and

k.      Whether Defendant should be declared financially responsible for notifying all Class members about their defective Restore paint and for all damages associated with the incorporation of such decking into Class members' homes, residences, buildings, and other structures.

60.     The claims and defenses of the named Plaintiffs are typical of the claims and defenses of the Class. Plaintiffs and all members of the class own or have owned homes, residences, or other structures on which Restore paint has been used. The product has failed, and

13

will continue to fail prematurely. The named Plaintiffs, like all Class members have been damaged by Defendant's conduct in that they have incurred or will incur the costs of repairing or replacing their decks and repairing the additional property and structure damaged by the Restore paint's premature failure. Furthermore, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

61.     The named Plaintiffs will fairly and adequately assert and protect the interests of the Class. Specifically, they have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class and they have no conflict of interest that will interfere with the maintenance of this class action.

62.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

   a.     The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

   b.     The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

   c.     There are no unusual legal or factual issues which would create manageability problems;

   d.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

   e.     Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

   f.     The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which class members can, as a practical matter, recover. However, the claims of individual Class

14

members are large enough to justify the expense and effort in maintaining a class action.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

63.     Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here. Defendant's failure to disclose this known but non-public information about the defective nature of their Restore paint – information over which they had exclusive control – and because Plaintiffs and Class Members therefore could not reasonably have known that the Products were defective, Defendant are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF MAGNUSON-MOSS ACT
(Plaintiffs Individually, and on behalf of Classes)

64.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

65.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (the "Act") in response to widespread complaints from consumers that many warranties were misleading and deceptive. The Act imposes civil liability on any "warrantor" for, inter alia, failing to comply with any obligation under a written warranty and/or implied warranty. See 15 U.S.C. § 2310(d)(1).

66.     Restore paint products are "consumer products", as that term is defined by 15 U.S.C. §2301(1).

67.     Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. §2301(3).

68.     Defendant are "warrantors" and "suppliers," as those terms are defined by 15 U.S.C. §2301(4) and (5).

69.     Defendant have failed to remedy the defects associated with Restore paint, despite knowledge of its propensity to prematurely bubble, peel, crack, flake, chip, and degrade after application.

70.     By Defendant's conduct as described herein, including Defendant knowledge of the defective Restore paint, and its actions, and inaction, in the face of that knowledge, Defendant have failed to comply with their obligations under their written and implied promises, warranties, and representations.

71.     As a result of Defendant's breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Restore paint, obtain damages and equitable relief, and obtain attorneys' fees and cost pursuant to 15 U.S.C. §2310.

## COUNT II
## BREACH OF IMPLIED WARRANTIES
(Plaintiffs Individually, and on behalf of Classes)

72.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

73.     Defendant designed, manufactured, marketed, advertised, warranted and sold Restore paint for purposes of its eventual sale to retail buyers.

74.     Defendant impliedly warranted that Restore paint products were properly designed, developed, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of workmanlike quality.

75.     Additionally, 13 Pa. Cons. Stat. §§2A212-2A213 implies warranties of merchantability and fitness for a particular purpose.

76.     Defendant knew and intended that Restore paint would be applied on exterior decks and patios throughout the United States where it would be exposed to high temperature and humid conditions in the summer, freezing temperatures and extremely dry air in the winter, and repeated freeze-thaw cycles.

77.     Restore paint is not merchantable because it has a propensity to bubble, peel, crack, flake, chip, or otherwise prematurely degrade that renders it unfit for the ordinary use of deck constructions and the quality is objectionable in the trade.

78.     Defendant knew that Plaintiffs and the Class would use Restore paint to cover and protect decks and patios, and Plaintiff and the Class relied upon Defendant's skill and judgment to furnish suitable decking material. Restore paint is not fit for its intended purpose because it has a propensity to bubble, peel, crack, flake, chip, or otherwise prematurely degrade.

79.     Plaintiffs and the Class relied upon said warranties and the claims, skill, expertise, and quality assurance of Defendant's workers to provide suitable goods.

80.     Defendant breached said warranties by failing to provide adequate and proper designs, calculations, or materials for Restore paint.

81.     Restore paint fails to perform in accordance with the reasonable expectations of Plaintiffs and the Class and the benefits of the design of Restore paint do not outweigh the risk of its failure.

82.     Defendant had and have, a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of Restore paint; Defendant further had, and have, a duty not to put defective products on the market.

17

83.     But for Defendant's breach of implied warranty, Plaintiffs and the proposed Class would not have sustained damages.

84.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class have suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

85.     Plaintiffs, on behalf of themselves and all other similarly situated, demand judgment against Defendant for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT III
## BREACH OF EXPRESS WARRANTY
(Plaintiffs Individually, and on behalf of Classes)

86.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

87.     Defendant made affirmations of fact and promises to Plaintiffs and members of the Class which related to Restore paint as more fully described herein.

88.     Defendant's affirmation of fact and promises became part of the basis of the bargain between the parties.

89.     These affirmations of fact and promises created an express warranty that Restore paint would conform to Defendant's affirmations and promises.

90.     Defendant uniformly warranted all of Restore paint against defects in material or workmanship at a time when they knew that it suffered from serious defects and, nevertheless, continued to market and sell Restore paint with this express warranty.

91.     The misrepresentations were made by Defendant to induce Plaintiffs and the Class members to purchase, and were material factors in their decisions to purchase Restore paint.

18

92.     Defendant are obligated under the terms of their written warranty to repair and/or replace the defective Restore paint sold to Plaintiffs and Class members and repair and/or replace any structural damages caused by the paint.

93.     Defendant have breached their written warranty, as set forth above, by supplying the Restore paint in a condition which does not meet the warranty obligations undertaken by Defendants, and by failing to repair the damages caused by the defective product.

94.     As set forth above, Defendant's warranty fails in its essential purpose and, accordingly, Plaintiffs and Class members cannot and should not be limited to the remedies set forth in the written warranty and instead should be permitted to recover all measures of appropriate relief.

95.     The limitations of damages and the limitations contained in the express warranty provisions are harsh, oppressive and one-sided. The limitations related to the amount of damages, the type of remedies available to Plaintiffs and Class Members are unconscionable when Defendant knew or should have known that there are defects in the design and manufacturing of Restore paint.

96.     As a direct and proximate result of Defendant's conduct and failure to conform to representations in breach of Defendant's express warranties, Plaintiffs and Class members have suffered damages, injury in fact and/or ascertainable loss in an amount to be determined at trial.

**COUNT IV**
**VIOLATION OF NEW JERSEY CONSMUER FRAUD ACT**
**N.J. Stat §§ 56:8-1 *et seq***
(New Jersey Plaintiff, individually and on behalf of the New Jersey Class)

97.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

98.     Defendant's transactions and business interactions with Plaintiffs and other New Jersey consumers are subject to the requirements of New Jersey law, including the N.J Stat. § 56:8-1 et seq. ("New Jersey Consumer Protection Act")

99.     The New Jersey Consumer Protection Act prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…." N.J. Stat§ 56:8-2. The New Jersey

100.    Defendant have engaged in unfair and deceptive practices by: (1) marketing and selling Restore paint with defects that cause the paint to prematurely degrade after application; and (2) intentionally failing to disclose and/or concealing these known defects to consumers.

101.    Defendant violated the New Jersey Consumer Protection Act when they represented, through their advertising and other express representations that the Restore paint was free from defects and would last for years protecting consumers' decks and patios, when in fact, the protective paint fails and begins to bubble, crack, chip, and flake shortly after application.

102.    Defendant violated the New Jersey Consumer Protection Act by negligently concealing from and/or intentionally failing to disclose material information about the true defective nature of the Restore paint.

103.    Defendant violated the New Jersey Consumer Protection Act by holding Restore paint out as a quality reliable product, when in fact, it is defective.

104.    As a direct and proximate result of Defendant's deceptive, negligent, and unfair practices, the Plaintiffs and other members of the Class have suffered injury in fact, actual

damages and ascertainable losses, in that they purchased Restore paint, which is inherently defective.

105.    Defendant's deceptive actions in connection with the manufacturing and distributing of Restore paint as set forth herein, demonstrate bad faith and misrepresentations so as to constitute unconscionable commercial practices, in violation of the New Jersey Consumer Protection Act.

106.    Plaintiffs and Class members relied on the Defendant's misrepresentations. Had Defendant disclosed in their marketing and sales statements the true quality of Restore paint, the Plaintiffs and Class members would not have purchased the product.

107.    Plaintiff, on behalf of himself and all others similarly situations, demand judgment against Defendant for damages and declaratory relief.

**COUNT V**
**UNNJUST ENRICHMENT**
(Plaintiffs Individually, and on behalf of Classes)

108.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

109.    Plaintiffs and the Class have conferred substantial benefits on Defendant by purchasing Restore paint products, and Defendant have knowingly and willingly accepted and enjoyed these benefits.

110.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that Restore paint would perform as represented and warranted. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

111.   Defendants, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of Restore paint reaped benefits, which resulted in Defendant's wrongful receipt of profits.

112.   Equity demands disgorgement of Defendant's ill-gotten gains. Defendant will be unjustly enriched unless Defendant are ordered to disgorge those profits for the benefit of Plaintiffs and the Class.

113.   As a direct and proximate cause of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**
(Plaintiffs Individually, and on behalf of Classes)

114.   Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

115.   In making material misrepresentations of material facts regarding the characteristics and capabilities of Restore paint through their advertising and product information publications that were in fact untrue, Defendant knew or should have known they were misrepresenting material facts and that the Plaintiffs and Class would be relying on Defendant's representations to their detriment and damage.

116.   In concealing material facts regarding the characteristics and capabilities of Restore paint, Defendant knew or should have known they were not disclosing material facts and that the Plaintiffs and the Class would be relying on Defendant's representation to their detriment and damage.

117.   Plaintiffs and the Class were unaware of the falsity of Defendant's representations, and as a result, they, or their contractor intermediaries, justifiably relied upon them in purchasing or applying Restore paint products to their decks and patios.

118.   Defendant made the false representations in the course of their business with the intent that the Plaintiffs and the Class would rely on them and purchase or construct structures using Restore paint.

119.   As a direct, proximate and foreseeable result of Defendant's failure to fully disclose material facts and its misrepresentations of material facts, Plaintiffs and the proposed Class suffered damage.

120.   As a result of Defendant's misconduct, Plaintiffs and the Class have suffered actual damages in that they purchased defective Restore paint.

121.   As a result of Defendant's misconduct, Plaintiffs and the Class will suffer damages that include the full cost to repair their decks and patios. Damages also include, without limitation, consequential and incidental damages.

122.   As a direct, proximate and foreseeable result of Defendant's negligent misrepresentations, the Plaintiffs and the Class sustained damages in an amount to be determined at trial.

123.   Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VII
## NEGLIGENCE
(Plaintiffs Individually, and on behalf of Classes)

124.   Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

125.    Defendant owed a duty to Plaintiffs and the proposed Class to exercise reasonable care while designing, manufacturing, marketing, advertising, warranting and selling Restore paint products.

126.    Defendant breached their duty to Plaintiffs and the Class by designing, manufacturing, selling, advertising, and warranting a defective product to Plaintiffs and the proposed Class and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

127.    Defendant knew or should have known that Restore paint is defective and does not perform its intended use. Upon information and belief, initial testing included accelerated weathering tests that failed to account for many of the climates in which Restore paint would be used.

128.    Despite lacking sufficient knowledge regarding the actual performance of Restore paint, Defendant marketed the product as durable, long-lasting, and low maintenance.

129.    Plaintiffs and the proposed Class were not aware of Restore paint's defective nature when they purchased the product.

130.    As a direct and proximate cause of Defendant's failures, Plaintiffs and the Class have suffered and will continue to suffer damages and economic loss described fully above in an amount to be proven at trial.

131.    As a result of Defendant's negligence, Plaintiffs and the Class have suffered actual damages in that they purchased and applied on their home decks and other structures decking material that is defective and that has failed or is failing prematurely. This failure has required or is requiring Plaintiffs and the Class to incur significant expense in repairing their decks.

132.    Plaintiffs, on behalf of themselves and all other similarly situated, demand judgment against Defendant for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

**COUNT VIII**
**DECLARATORY AND INJUNCTIVE RELIEF**
(Plaintiffs Individually, and on behalf of Classes)

133.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

134.    Defendant acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

135.    Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.    Restore paint manufactured until the present has defects which cause it to prematurely degrade and fail resulting in damage to deck and other structures and the necessity to repair related damage;

b.    Restore paint manufactured until the present has a defect in workmanship and material that causes failures;

c.    Defendant knew of the defects in Restore paint and that the warranties are unenforceable;

d.    Defendant shall re-audit and reassess all prior warranty claims on Restore paint, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.    Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require Defendant to inspect, upon request, a Class member's structure to determine whether a Restore paint failure is manifest.

## PRAYER FOR RELIEF

136.   WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered jointly and severally upon Defendant Rust-Oleum Corporation and Defendant RPM International Inc. as follows:

A.   Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representative, and designating the undersigned as class counsel;

B.   Declare that Defendant are financially responsible for notifying all Class members of the problems with Restore paint;

C.   Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of Restore paint, or order Defendant to make full restitution to Plaintiffs and the members of the Class;

D.   Defendant shall re-audit and reassess all prior warranty claims regarding Restore paint, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

E.   For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

F.   For actual damages sustained or treble damages;

G.   For punitive or exemplary damages;

H.   For injunctive and declaratory relief;

I.   For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.   For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

137.    Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.

Respectfully submitted,

Dated: __10/28/14__

By_____

William M. Audet
waudet@audetlaw.com
Joshua C. Ezrin
jezrin@audetlaw.com
Theodore H. Chase
tchase@audetlaw.com
AUDET & PARTNERS, LLP
221 Main St., Ste. 1460
San Francisco, CA 94105
(415)568-2555
(415)568-2556 (fax)

Daniel Levin
dlevin@lfsblaw.com
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street. Suite 500
Philadelphia, Pennsylvania 19106
(215) 592-1500
(215) 592-4663 (fax)

Charles J. LaDuca
charlesl@cuneolaw.com
Brendan S. Thompson
brendant@cuneolaw.com
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Ave., Suite 810
Bethesda, MD 20814
(202)789-3960
(202)789-1819 (fax)